Altheimer, Gray, Naiburg & Lawton, Chicago, Ill., by Lionel G. Gross, Chicago, Ill., for defendant.

Soans, Anderson, Luedeka & Fitch, Chicago, Ill., by Francis A. Even, Chicago, Ill., for Simmons Co.

UNITED STATES of America

v.

SERTA ASSOCIATES, INC.

No. 60 C 843.

United States District Court
N. D. Illinois, E. D.

Dec. 11, 1961.

ROBSON, District Judge.

This comes on for a ruling on the motion of the Simmons Company to quash a subpoena duces tecum. The action here was instituted by the United States under Section 4 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 4. The complaint charges that Serta Associates, Inc. and certain co-conspirators, consisting of its member factories, have engaged in a combination and conspiracy in unreasonable restraint of interstate commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1.

Serta is a corporation whose shareholder-member factories are independent persons, firms and corporations engaged in the business of manufacturing and selling mattresses, etc. The member

factories are licensed or franchised to manufacture the items under the Serta trade names and trademarks.

The charge, in substance, alleges that the conspiracy has consisted of a continuing agreement among Serta and the co-conspirators whereby: (a) each member factory would sell Serta products only within the exclusive marketing territory allocated to it, and would refrain from selling Serta products outside such exclusive marketing territory; (b) Serta and the co-conspirators would fix uniform suggested retail prices, and would induce retail stores to adhere to such suggested retail prices.

Serta has caused a subpoena duces tecum to be served upon D. G. Hutchinson, registered agent for Simmons, requiring him to produce various documents and reports in connection with a proposed deposition. Simmons Company is a competitor of Serta and is not a party to this action.

Simmons has moved to quash or modify the subpoena duces tecum. It raises no objection, however, to documents called for by items 1(b), 1(d), and 4, which are already public information, and it further states that it has no documents of the nature demanded by items 1(e) and 3. Specifically, the motion to quash is addressed to items 1(a), 1(c), and 2 of the subpoena.

This motion to quash is predicated on the ground that the documents sought contain information of confidential data and business secrets that would be of competitive advantage to Serta, and further, that the information subpoenaed is not relevant to the determination of whether Serta conspired with its member factories to fix prices and allocate markets or any proper defense to those charges. The items objected to are as follows:

"1. Documents which show for the years 1959 and 1960 (a) The dollar amounts spent by you in the preparation and publication of advertising of mattresses and bed springs * * * manufactured by you, in the following media: (1) magazines and trade publications, (2) newspapers, (3) radio and television, (4) point of sale flyers, (5) direct mail, and (6) other advertising media.

"(c) The proportion of your unit or dollar sales of mattresses and bed springs which consisted of mattresses and bed springs bearing an advertised trademark, or advertised or displayed in connection with a trademark, as against non-trademark mattresses and bed springs.

"2. A copy of each advertisement for mattresses and bed springs manufactured by you, which advertisement appeared in magazines, newspapers, trade publications, point of sale flyers, direct mail, or other forms of advertising media, including scripts used on television and radio, during the year 1960, and for which advertising you paid all or some portion of the cost for the services of an advertising or public relations agency which in turn paid all or some portion of the cost of the advertising."

In support of its motion Simmons has filed the affidavit of Joseph V. Quarles, its Executive Vice-President who states therein that the particularized breakdown demanded would enable Serta to learn the relation of Simmons' sales of trademarked mattresses and bedding to that of its non-trademarked mattresses and bedding and the names of all of Simmons' dealers, derived from dealer placed advertisements, with the quantity of advertising placed by each, from which Serta could calculate the volume of each dealer's sales in trademarked mattresses and other Simmons bedding, from published data on advertising credit allowances and advertising space rates.

Serta has alleged in its answer that "the purpose and effect of its arrangements with its member factories are to stimulate competition in the sale of mat-

tresses, foundations and combinations through the joint use by said member factories of national advertising programs and promotions. \* \* \* Said arrangements have enabled defendant's member factories to more effectively compete with the few large integrated national manufacturers of bedding which would otherwise dominate and monopolize the market for such products."

The complaint alleges price fixing and market allocations by Serta, which it has denied. Defendant alleges the agreements made were reasonable ancillary restraints, valid under the Sherman Act, and the evidence sought by this subpoena would completely corroborate the reasonableness.

The plaintiff, the Government, has also filed a brief supportive of the motion to quash the subpoena. It asserts that the complaint raises per se violations of the Sherman Act which fact renders completely irrelevant the subpoenaed material, tending to confirm the reasonableness of defendant's conduct.

Also on the issue of relevancy the Government points out the inherent vital differences in corporate structures of defendant and Simmons, which differences in themselves would make the material sought irrelevant in that acts reasonable for the one business might not be reasonable for the other. It maintains that defendant is a co-operative scheme of essentially independent competitive businesses joining under a panoply of trademarks, and not, as is Simmons, a development of a truly singular venture from a trade name.

This Court's judgment is to be guided by the standards of the Federal Rules which provide (Rule 45(b) and 26(b), Fed.Rules Civ.Proc. 28 U.S.C.A.) that subpoenaed material is to be relevant, and that a subpoena is to be quashed if it is unreasonable or oppressive.

The Court is of the opinion that the motion to quash has merit, at least at this stage of this proceeding. It so concludes because it is not convinced of the rele-

vancy of the documents sought, and additionally because it would be most reluctant to force a non-party competitor to divulge confidential information.

It is not too apparent at this time that the activities and manner of operation of Simmons will have any bearing upon the determination of the issue of the guilt or innocence of the instant defendant. This will be especially true if the Government's assertion that the complaint's charges be of per se violations of the Sherman Act, is accurate.

While this Court is not bound by any determination it makes in any pending cause, it notes that on May 25th of this year it rendered a similar ruling on a motion of the defendant to stay the return by the United States of documents presented to the Grand Jury, and seeking the production of the documents to defendant.

The motion of Simmons to quash as to items 1(a), 1(c) and 2 of the subpoena duces tecum is granted.